**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BILLY DANIEL BOWLES and | ) | Case No. 08-50065 |
| TAMMY GAIL BOWLES, | ) | |
| | ) | |
| Debtors. | ) | Chapter 13 |
| _____ | ) | |

## MEMORANDUM OPINION

This matter came before the Court on July 29, 2009, upon the Motion to Surrender

Collateral (the "Motion to Surrender"), filed on July 2, 2009, by the above-referenced debtors

(the "Debtors"), and the Objection by Branch Banking & Trust Company to Debtors' Motion to

Surrender Collateral (the "Objection"), filed by Branch Banking & Trust Company ("BB&T")

on July 10, 2009.  At the hearing, William V. Bost  appeared on behalf of the Debtors, Jewel A.

Farlow appeared on behalf of BB&T, and Vernon C. Cahoon appeared on behalf of the Chapter

13 Trustee.  Upon consideration of the Motion to Surrender, the Objection, the evidence

presented at the hearing, the arguments of counsel, the relevant law, and the entire official file,

the Motion to Surrender will be granted.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28

U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States

District Court for the Middle District of North Carolina on August 15, 1984.  This is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L), which this Court has the jurisdiction

to hear and determine.

1

## II.  FACTS

On January 17, 2009, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code.  Pursuant to their Statement of Current Monthly Income (the "Form B22C"), the Debtors are above-median income debtors; their annualized income is $66,252.12, which exceeds the applicable median family income by $4,832.12.  The Form B22C shows that the Debtors' monthly disposable income was negative $1,030.37.  On Schedule B, the Debtors listed a 2006 Dodge Durango (the "Durango") with a value of $17,950.00.  Schedule D shows that BB&T has a purchase money security interest in the Durango for $27,370.00, $9,420.00 of which is unsecured. The Form B22C also shows a $450.00 monthly payment to BB&T for the debt secured by the Durango.  Schedule I shows that the Debtors have monthly income of $4,450.00, of which $920.00 is Social Security income due to the male Debtor's disability, and $930.00 is adoption assistance for two children, ages 11 and 16.  Schedule I also indicates that the adoption assistance payments for each child will end when the child reaches 18 years of age.  Schedule J shows that the Debtors have $3,603.00 in monthly expenses, leaving $847.00 per month in net income.  The payment for the Durango was not included in Schedule J; instead, the Debtors proposed a modified payment of $370.16 per month over 60 months based on a value of $17,950.

On March 6, 2008, the Debtors filed a proposed plan of reorganization (the "Plan") in which they sought to pay BB&T's claim of $26,796.98 by giving it "dual status"[1] treatment.  The

---

[1]"Dual status" refers to a type of treatment of a Section 1325(a)(9) claim in a Chapter 13 plan.  The term derives from the holding of some courts that any portion of a Section 1325(a)(9) claim that is attributable to negative equity is not part of a purchase money security interest and therefore should be treated as unsecured, with the rest of the indebtedness treated as secured. See In re Conyers, 379 B.R. 576, 583 (Bankr. M.D.N.C. 2007) (Carruthers, J.).  See also Wells

Plan proposed that $23,215.00 of the debt be treated as secured and $3,581.98 as unsecured.

BB&T was to be paid $485.00 per month, with a $180.00 adequate protection payment. On

March 26, 2008, BB&T objected to the "dual status" treatment of its claim. The Debtors and

BB&T agreed to the Debtors' treatment of the claim, but they also agreed to a special provision:

because the United States Court of Appeals for the Fourth Circuit was then considering the issue,

BB&T reserved the right to request reconsideration of the Plan's treatment of its claim after the

Fourth Circuit ruled. On May 7, 2008, the Plan was confirmed with the special provision.

On April 13, 2009, the Fourth Circuit decided In re Price, 562 F.3d 618 (4th Cir. 2009),

holding that the entire price of the vehicle, including any negative equity, is part of the creditor's

purchase money security interest and that the claim should be treated as fully secured. Id. at 629.

On May 18, 2009, BB&T filed a Motion Requesting Reconsideration of Treatment of Claim

Filed by BB&T (the "Motion to Reconsider"), requesting reconsideration of the treatment of

BB&T's claim under the Plan. On June 12, 2009, the Motion to Reconsider was granted, and the

Plan was amended to require full payment of the indebtedness to BB&T. Soon after, the Motion

to Surrender was filed, followed by the Objection. The Motion to Surrender alleged that a

substantial change had occurred in the Debtors' financial situation and that they could no longer

afford to pay for the Durango. The Debtors proposed to surrender the Durango to BB&T. In the

Objection, BB&T alleged that the Debtors had not experienced a substantial change in

circumstances, and BB&T objected to the surrender of the Durango. In their reply, the Debtors

stated that the female Debtor's income was reduced and that she had been forced to take work

---

Fargo Financial North Carolina 1, Inc. v. Price, No. 07–133, slip op. at *5 (E.D.N.C. Nov. 14, 2007) (2007 WL 5297071), rev'd sub nom. In re Price, 562 F.3d 618 (4th Cir. 2009).

furloughs.  Also, the Debtors noted that they lost income of $634.00 per month because they would not longer be receiving adoption assistance payments for their oldest child.  On July 24, 2009, the Debtors filed amended Schedules I and J, which show a $1,731.76 decrease in income, and a $980.00 decrease in expenses, leaving net income of only $95.24 per month.

At the hearing on July 29, 2009, the Debtors presented uncontroverted evidence of the reduction in the female Debtor's income through furloughs and salary reductions, the loss of adoption assistance income, and the attempt of the disabled male Debtor[2] to earn extra money by delivering pizza on a part time basis.  The female Debtor also testified that upon the filing of the Motion to Reconsider, the Debtors stopped using the Durango, removed the license plate, and prepared it for return to BB&T.  BB&T refused to take possession of the Durango.  BB&T presented evidence as to the value of the Durango and the retention by the Debtors of an all-terrain vehicle (the "ATV") at a cost of $65.00 per month.  The female Debtor testified that the male Debtor needed the ATV to care for his disabled elderly mother who lived nearby.

### III.  DISCUSSION

Under Section 1329(a), a confirmed plan may be changed to increase or decrease plan payments at any time after confirmation.  When a bankruptcy court is faced with a motion for modification pursuant to Section 1329(a)(1) or (2), the court must determine if the debtor has "experienced a substantial and unanticipated change in his post-confirmation financial condition."  In re Murphy, 474 F.3d 143, 150 (4th Cir. 2007) (citing In re Arnold, 869 F.2d 240, 241 (4th Cir. 1989)).  In Arnold, the Fourth Circuit adopted "the objective test applied in Fitak to

---

[2]During the hearing, the female Debtor testified that the make Debtor has one artificial leg and severe back problems which precludes him from lifting or standing for long periods of time.

determine whether a change was unanticipated: 'whether a debtor's altered financial circumstances could have been reasonably anticipated at the time of confirmation by the parties seeking modification.'" In re Arnold, 869 F.2d at 243 (citing In re Fitak, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988)). These circumstances must be unknown at confirmation. United States v. In re Bullion Hollow Enters., Inc. (In re Bullion Hollow Enters., Inc.), 185 B.R. 726, 730 (W.D. Va. 1995). In the Fourth Circuit, res judicata applies to motions to modify confirmed plans and therefore a debtor must experience an unanticipated, substantial change in circumstances before a confirmed plan may be modified pursuant to Section 1329. In re Butler, 174 B.R. 44, 47 (Bankr. M.D.N.C. 1994). When a modification is filed both in good faith and as a result of a substantial, unanticipated change, the plan is not res judicata. In re Miller, No. 99-81330, slip op. at *6 (Bankr. M.D.N.C. Apr. 19, 2002) (2002 WL 31115656). Any proposed modification must be made in good faith under Section 1325(a)(3). 11 U.S.C. § 1329(b).

The Debtors have experienced two substantial, unanticipated changes in circumstances. First, thirteen months after the Plan was confirmed, the Fourth Circuit ruled on a critical interpretation of Section 1325(a)(9), and the Plan was subsequently modified to increase the payment to BB&T as mandated by the Price ruling. Such a change was substantial because the increased payment to BB&T, coupled with the reduction in the Debtors' net income, made the Plan unworkable. Any increase in the Debtor's Plan payment or any decrease in their net income would make the Plan unfeasible.[3] Because the Fourth Circuit had three different

---

[3]Although the Debtors' original Schedule J showed that they had only $847.00 of net income with which to make a Plan payment of $1,110.00, Judge Carruthers found at the confirmation hearing on April 2, 2008, that the Debtors had $250.00 more income, giving them monthly income of $1,097.00 and monthly expenses of $1,100.00.

5

treatments of Section 1325(a)(9) claims from which to choose,[4] only one of which would cause the Debtors to pay more for the Durango, the change was unanticipated. If, at the time that the Plan was confirmed, courts could not agree on the proper interpretation of Section 1325(a)(9), then how can the Debtors be charged with knowledge of how the Fourth Circuit would rule on the issue?

Second, the Debtors' net income decreased by $752.00 per month. The female Debtor had her pay reduced and has been furloughed for several weeks. Such circumstances are commonly held to constitute a substantial and unanticipated change in circumstances. See, e.g., In re White, No. 07-30899, slip op. at *5 (Bankr. W.D.N.C. Apr. 17, 2008) (2008 WL 6069551); In re Ireland, 366 B.R. 27, 33 (Bankr. W.D. Ark. 2007). While there was also a decrease in the Debtors' income due to the cessation of the adoption assistance payment, that decrease was anticipated; a portion of such payment ceased because the Debtors' oldest child reached the age of majority.

Finally, the Debtors acted in good faith under Section 1325(a)(6). Once the Debtors realized that they could not afford to keep the Durango, they informed their attorney, who filed the Motion to Surrender. The Debtors then parked the vehicle, removed the license plate, and otherwise prepared the vehicle for BB&T to repossess. BB&T refused to take the Durango back.

---

[4]Compare In re Wall, 376 B.R. 769, 771 (Bankr. W.D.N.C. 2007) (finding that negative equity is part of a purchase money security interest and treating the entire claim as secured) with In re Conyers, 379 B.R. 576, 583 (Bankr. M.D.N.C. 2007) (finding that the portion of the claim attributable to negative equity is not part of a purchase money security interest and treating that portion as unsecured, with the rest of the claim being treated as secured) with In re Price, 363 B.R. 734, 746 (Bankr. E.D.N.C. 2007) (finding that if any portion of the claim is attributable to negative equity, then no portion of the claim is secured by a purchase money security interest, and treating the entire claim as unsecured).

Instead, BB&T argues that the Debtors should be forced to keep the Durango and the entire indebtedness that they owe to BB&T. But if the Debtors were required to make the full payment on the Durango in the amount of $580.00 per month, they would quickly default under the Plan. In the Court's experience, debtors choose to pay for food, shelter, and utilities before they pay for a vehicle that they do not need. In this case, the Debtors' need for food, shelter, and utilities greatly outweighs their need for a second vehicle, making the release of the Durango the only real choice that the Debtors have. The Court understands that BB&T would rather receive payment in full for the Durango, but the Bankruptcy Code does not force debtors to go without the basic necessities of life to pay for assets that they do not need.

Section 1329(a) provides that a plan may be modified after confirmation but before payments under the plan are completed. Section 1329(b) provides that the requirements of Section 1325(a) apply to any modification under subsection (a). Section 1325(a)(5)(C) provides that a debtor may surrender the property securing a claim to the claimant, which is what the Debtors propose to do. See, e.g., In re Mellors, 372 B.R. 763, 774-76 (Bankr. W.D. Pa. 2007) (debtors allowed to modify confirmed plan to surrender damaged vehicle); In re Marino, 349 B.R. 922, 923-24 (Bankr. S.D. Fla. 2006) (debtors allowed to modify confirmed plan to surrender vehicle and treat deficiency as unsecured claim); In re Townley, 256 B.R. 697, 699-700 (Bankr. D.N.J. 2000) (debtors allowed to modify confirmed plan to surrender vehicle in full satisfaction); In re Conley, No. 97-16705, slip op. at *4 (Bankr. E.D. Va. Sept. 28, 2000) (2000 WL 1805324) (debtors allowed to modify confirmed plan to surrender vehicle and treat deficiency as unsecured claim); 3 Keith M. Lundin, Chapter 13 Bankruptcy § 264.1 (3d ed. 2000 & Supp. 2004). In so doing, the Debtors also seek to treat any deficiency claim of BB&T as

unsecured.

Under Section 502(j), the Court may reconsider the treatment of the BB&T claim for "cause" according to the "equities of the case." 11 U.S.C. § 502(j); <u>In re Mellors</u>, 372 B.R. at 775-76 (reconsideration granted permitting debtors to surrender vehicle that had been damaged); <u>In re Miller</u>, at *6-7 (reconsideration granted permitting debtors to surrender vehicle). If a debtor has abused or neglected the collateral, then she cannot shift the burden of depreciation onto the creditor. <u>In re Butler</u>, 174 B.R. at 48; <u>In re Miller</u>, at *5. BB&T presented evidence that the Durango has depreciated, but BB&T did not show that the depreciation was not caused by abuse or neglect by the Debtors. <u>See</u> <u>In re Miller</u>, at *7. In this case, the equities lie with the Debtors. Releasing the Durango is the only option that they have, and there was no evidence to suggest abuse or neglect of the Durango. The evidence shows just the opposite. The Debtors maintained the vehicle, stopping using it when they realized that they could no longer afford it, and then prepared it for turnover to BB&T.

## IV. CONCLUSION

A debtor must show a substantial and unanticipated change in circumstances to modify her Chapter 13 plan under Section 1329. The loss in income of the female Debtor and the change in treatment of the BB&T claim were both substantial and unanticipated. Therefore, the Objection will be overruled, and the Motion to Surrender will be granted.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BILLY DANIEL BOWLES and | ) | Case No. 08-50065 |
| TAMMY GAIL BOWLES, | ) | |
| | ) | |
| Debtors. | ) | Chapter 13 |
| _____ | ) | |


**<u>PARTIES IN INTEREST</u>**

Billy and Tammy Bowles

William V. Bost

Jewel A. Farlow

Kathryn L. Bringle, Trustee

9